# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

J.B. HUNT TRANSPORT, INC.,

       Plaintiff,

v.                                                    Case No. 04-CV-70347-DT

JAMAL ADAMS and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

       Defendants,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Third-Party Plaintiff,

v.

HERMAN DIAZ,

       Third-Party Defendant.

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Counter-Claimant,

v.

J.B. HUNT,

       Counter-Defendant,

and STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Third-Party Plaintiff,

v.

BLUE CARE NETWORK OF MICHIGAN,

    Third-Party Defendant,

_____/

### ORDER DENYING STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S "MOTION FOR SUMMARY JUDGMENT" AND DENYING BLUE CARE NETWORK'S "MOTION FOR PARTIAL SUMMARY JUDGMENT"

Pending before the court is State Farm Mutual Automobile Insurance Company's ("State Farm's") "Motion For Summary Judgment" and Blue Care Network's ("Blue Care's") "Motion for Partial Summary Judgment." The court held a hearing in this matter on December 7, 2005. For the reasons stated below, the court will deny both motions.

### I. BACKGROUND

On April 2, 2003, in Southfield, Michigan, a tractor-trailer owned by J.B. Hunt Transport, Inc. ("J.B. Hunt")[1] and driven by J.B. Hunt employee, Herman Diaz, and a motorcycle being driven by Jamal Adams collided. (Blue Care's Mot. at Ex. 1, Traffic Crash Report; J.B. Hunt's Resp. at iv.) As a result of this collision, Mr. Adams was seriously injured and sustained "vertebral fractures, a left lower leg puncture wound, and a spinal cord injury that has left [him] paralyzed below the lower chest/upper abdomen." (Szabo Aff. at ¶ 3.)[2] Following the accident, Mr. Adams requested that J.B. Hunt provide him personal protection benefits in connection with the collision. (State

_____

[1]J.B. Hunt was incorporated in Georgia and its principal place of business is in Lowell, Arkansas. The tractor in question was registered in the state of Oklahoma. (*See* J.B. Hunt's Compl. For Declaratory Judgment.)

[2]Ms. Lorie Szabo is a claims representative for State Farm.

Farm's Mot. at Ex. 3, 4/25/03 Application for Benefits.)  J.B. Hunt refused to pay the

benefits as requested and challenged the constitutionality of the Michigan No-Fault Act.

(J.B. Hunt's Answer to State Farm's Counterclaim at ¶¶ 5-6.)  On or about May 2003,

Mr. Adams requested that State Farm, his motor vehicle insurer, provide him with no-

fault benefits.  (Szabo Aff. at ¶ 5.)  State Farm provided these benefits to Mr. Adams

and seeks to be reimbursed and indemnified "for all personal protection insurance

benefits that State Farm has paid and will pay to [Mr.] Adams in connection with the

April 2, 2003 accident."  (State Farm's Mot. at 6; *see also* Szabo Aff. at ¶ 6.)  Blue Care[3]

also asks the court to grant partial summary judgment in its favor, and hold that J.B.

Hunt is primarily liable for coverage of personal protection insurance benefits to Mr.

Adams.  (Blue Care's Mot. at 11-12.)  State Farm filed its "Motion for Summary

Judgment" on September 29, 2005 and Blue Care filed its "Motion for Partial Summary

Judgment" on October 3, 2005.

---

[3]Blue Care administered the group health plan in which Mr. Adams was enrolled
through his employer, Ameritech Michigan Bell.  (Blue Care's Answer to Third-Party
Complaint at ¶ 5; Blue Care's Mot. at 1.)

3

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material.  *See id* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").  A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

4

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Dunigan v. Noble*, 390 F.3d 486,492 (6th Cir. 2004) ("[W]e must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'") The court does not weigh the evidence to determine the truth of the matter, but must determine if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

## III. DISCUSSION

### A. Security Requirements of Mich. Comp. Laws § 500.3102(1)

The parties' first dispute focuses on whether J.B. Hunt's tractor-trailer was operated in Michigan for more than 30 days in 2003.[4] [5] Pursuant to Mich. Comp. Laws §

---

[4]The security for the payment of personal protection insurance benefits is only "required to be in effect during the period the motor vehicle is driven or moved upon a highway." Mich. Comp. Laws § 500.3101(1).

[5]During the hearing conducted in this matter, State Farm's counsel asserted that "the thirty day aggregate number is for any calendar year, the requirement kicks in." (Hearing Tr. at 19.) The court notes, however, that Judge Reilly in his concurring opinion in *Grossheim v. Associated Truck Lines, Inc.*, 450 N.W.2d 40 (Mich. Ct. App. 1989) stated that "M.C.L. § 500.3102; M.S.A. § 24.13102 must be interpreted to impose the burden on the nonresident owner or registrant of the vehicle which is not registered in Michigan to maintain records to support the claim that the vehicle had not been operated in Michigan for more than thirty days in the *previous* calendar year." *Id.* at 42 (emphasis added); *see also Citizens Ins. Co. of America v. Roadway Exp., Inc.*, 354 N.W.2d 385, 387 (Mich. Ct. App. 1984) (holding that "Roadway submitted uncontroverted affidavits stating that its trailer was registered in the State of Tennessee and had not been operated in Michigan for more than 30 days during the *preceding* calendar year.") (emphasis added).

5

500.3102(1):

> A nonresident owner or registrant of a motor vehicle or motorcycle not
> registered in this state shall not operate or permit the motor vehicle or
> motorcycle to be operated in this state for an aggregate of more than 30
> days in any calendar year unless he or she continuously maintains
> security for the payment of benefits pursuant to this chapter.

Mich. Comp. Laws § 500.3102(1).[6]  Therefore, statutorily, "[s]ecurity must be maintained

for vehicles operated in this state for more than thirty days in a single calendar year."

*Parks*, 393 N.W.2d at 837.

In its response to the motions for summary judgment, J.B. Hunt contends that it

is "not obligated to pay personal injury protection benefits to Jamal Adams because J.B.

Hunt's tractor was registered in Oklahoma and was not operated in the State of

Michigan for more than 30 days in 2003," but was "in the State of Michigan for only 30

days during the calendar year 2003."[7]  (J.B. Hunt's Resp. at 6.)  J.B. Hunt also asserts

that its trailer was not operated in Michigan for *more* than 30 days in the year 2003.  (*Id.*

at 10.)

---

[6]Mich. Comp. Laws § 500.3101(2)(e) defines a motor vehicle as "a vehicle,
including a trailer, operated or designed for operation upon a public highway by power
other than muscular power which has more than 2 wheels."  Mich. Comp. Laws §
500.3101(2)(e).  A trailer is considered to have "an identity separate from that of the
tractor to which it [i]s attached."  *Parks v. Detroit Automobile Inter-Insurance Exchange*,
393 N.W.2d 833, 836 (Mich. 1986).

[7]J.B. Hunt relies on the On-Board Computer ("OBC") reports, (State Farm's Mot.
at Ex. 7), Wesley Griffin's Dep. (*id.* at Ex. 8), and its Answers to State Farm's Requests
for Admission, (*id.* at Ex. 6).  During his deposition, Mr. Griffin, J.B. Hunt's Director of
Litigation, testified that the Locations OBC Reports are a compilation by the vehicle's
on-board computer of the GPS location of the tractor.  (Griffin Dep. at 74-76.)

### 1.  Tractor

State Farm and Blue Care argue that the OBC Reports that J.B. Hunt produced indicate that the tractor involved in the subject accident was in the State of Michigan for at least 30 days in the calendar year 2003.  (State Farm's Mot. at 13; Blue Care's Mot. at 7-8.)  State Farm also points out that in response to its request that J.B. Hunt "[a]dmit that the tractor involved in the subject accident was driven in Michigan for more than 30 days in any calendar year," J.B. Hunt admitted that "in some calendar years the tractor involved in the subject accident was driven in Michigan for more than 30 days."  (State Farm's Mot. at 15, Ex. 6.)

J.B. Hunt argues, on the other hand, that the OBC reports demonstrate that the tractor operated by J.B. Hunt was in the State of Michigan for only 30 days during the calendar year 2003 and it is not obligated to pay personal injury protection benefits to Mr. Adams.  (J.B. Hunt's Resp. at 6 (citing State Farm's Mot. at Exs. 6 ("Answers to State Farm's Requests for Admission No. 1), 7 (OBC Reports), and 8 (Griffin Dep.).)

The OBC reports that J.B. Hunt produced show that the tractor was operated in the State of Michigan on the following days in 2003:

1.     January 6
2.     January 7
3.     January 21
4.     January 22
5.     February 2
6.     February 3
7.     February 9
8.     February 10
9.     February 11
10.    February 12
11.    February 17
12.    February 18
13.    February 19

7

14.    March 10
15.    March 11
16.    March 12
17.    March 13
18.    March 18
19.    March 19
20.    March 24
21.    March 25
22.    March 30
23.    March 31
24.    April 1
25.    April 2
26.    April 3
27.    April 4
28.    April 27
29.    April 28
30.    April 29[8]

(State Farm's Mot. at Ex. 7, OBC Reports.)

In his discussion of the OBC Reports, Mr. Griffin testified that the OBC "is set up to essentially ping every unit that is – that we have the Qualcom on and register a location once every hour" and "if the driver turns the truck off, it will send a signal and it will ping that location."  (Griffin Dep. at 76.)

State Farm argues, however, that the court cannot determine that the dates listed on the OBC reports are the total number of days, as Mr. Griffin also testified that the OBC "doesn't always ping" and noted that "[t]here are several things that can come into play" and cause the OBC system not to register activity, including cloudy conditions, interference because of tall buildings, falling snow or power lines.  (Griffin Dep. at 77.) This strikes the court as State Farm grasping at mere possibilities rather than pointing to actual facts.

––––––––––––––––––––

[8]State Farm conceded at the hearing that the statute requires "more than thirty" days.  (Hrg. Tr. at 13.)

State Farm also points out that the records produced by J.B. Hunt ended on May 4, 2003, while Mr. Griffin testified that the title to the subject tractor was not "released" by J.B. Hunt until May 28, 2003.  (Griffin Dep. at 74.)  Although this could indicate that the tractor *might* not have been taken out of service on May 4, 2003, reasonable inferences must be drawn in favor of the non-moving party.  The court concludes that a reasonable jury could readily find that the tractor was no longer used after May 4, 2003 and that the OBC reports accurately captured all driver activity.  Accordingly, a jury could find that the tractor was operated in Michigan for only 30 days in 2003.

### 2.  Trailer

State Farm argues that the repair records, produced by J.B. Hunt in this action, indicate that the trailer at issue was present in the State of Michigan for a minimum of 62 days in the year 2003 and was operated no less than 31 days in the year 2003.  (State Farm's Mot. at 12.)  In its motion, State Farm asserts that the trailer was operated in the State of Michigan on at least the following dates in calendar year 2003:

1.    January 20
2.    February 7
3.    February 11
4.    February 21
5.    February 24
6.    March 16
7.    March 17
8.    March 26
9.    March 27
10.   March 31
11.   April 2
12.   April 10[9]

---

[9]State Farm asserted in its motion that Bates #201 reflected a date of  April 1, 2003, however that repair record reflects a date of April 10, 2003.  (*See* State Farm's Mot. at Ex. 5.)

9

13.     April 11
14.     May 8
15.     May 19
16.     May 20
17.     May 22
18.     May 27
19.     June 2
20.     June 4
21.     August 1
22.     August 4
23.     August 22
24.     August 24
25.     September 1
26.     September 8
27.     October 14
28.     December 6
29.     December 8
30.     December 12
31.     December 15[10]
32.     December 17

(State Farm's Mot. at Ex. 5, Repair Records.)

Blue Care's theory is that "[t]he trailer had to be operated within the State of Michigan at a minimum on the day it was driven to the repair facility, and on the day it left the facility."  (Blue Care's Mot. at 7.)  Blue Care asserts that "[i]ncluding only these dates, and not the time i[t] was being repaired, or other dates when the trailer was in use but not in need of repair, the trailer was operated in Michigan for a minimum of [thirty-one] days."  (Id.)[11]  In a similar vein, State Farm asserts that "even assuming that

---

[10] This date appeared only in State Farm's Reply Brief, as explained, infra.

[11] During the hearing, State Farm's counsel stated that the trailer "was operated in the state of Michigan to have had repairs performed in the state of Michigan" because it must be assumed that the trailer "wasn't air lifted," but was "driven to the repair facility and driven out of the repair facility" after the repairs were completed."  (Hrg. Transcript at 8-9.)  State Farm's counsel conceded, however, that if a trailer is "sitting in the parking lot," it is not being "operated."  (Id. at 8.)

10

the trailer was only 'operated' on the first day and last day of each repair, the trailer still was operated in the state . . . no less than 31 days in 2003."  (State Farm's Mot. at 12.)[12]

State Farm also argues that in response to its request that J.B. Hunt "[a]dmit that the trailer involved in the subject accident was driven in Michigan for more than 30 days in any calendar year," (State Farm's Mot. at Ex. 6, Requests for Admission), J.B. Hunt admitted that "in some calendar years the tractor [sic] involved in the subject accident was driven in Michigan for more than 30 days."  (*Id.*)

State Farm's and Blue Care's theory, however, produces a total of only 30 days that the trailer was operated either into or from a repair facility.  During the hearing, State Farm's counsel stated that March 27-28 should have been included in the tally of dates, but later acknowledged that she did not "have the Bates number for . . . March 27 and March 28."  (Hrg. Tr. at 14-16.)  Those asserted dates, therefore, lack supporting evidence. There is no dispute that the trailer was in use on the date of the accident, April 2, 2003, which is not covered by a repair record.

State Farm listed in its motion only December 12 and 17, *see* State Farm's Mot. at 12, but in its reply brief, seeks to list an additional intermediate day, December 15. State Farm cites as support for this addition two repair records that it says run from December 12, 2003-December 15, 2003, and from December 15, 2003 -December 17,

---

[12]In its response brief, J.B. Hunt takes issue with State Farm and Blue Care's assertion that J.B. Hunt's repair records stand for the proposition that the trailer at issue was operated in the State of Michigan for well over 30 days in the calendar year 2003. (J.B. Hunt's Resp. at 10.)  J.B. Hunt argues that "being 'present' or being 'in' Michigan does not equate with being 'operated' in Michigan within the meaning of Michigan's No Fault Act."  (*Id.*)

11

2003.  (*See* State Farm's Reply Br. at 2).  State Farm's argument is that the trailer was removed from one facility and taken (i.e., "operated" on the roadway) to another on December 15, a day that the first repair was supposedly completed and the second repair was commenced.  The evidence cited, *see* State Farm's Mot. at Ex. 5, at Bates #101 and #102-#103, however, does not support – and indeed appears to belie – this contention.

State Farm asserts that Bates #101 is related to a certain repair facility on "William Avenue," but that document contains no reference to "William" or "Avenue". There is a "location" listed, and it is "Road Service Dept."  The date listed is "121203," an obvious reference to December 12, 2003.  There is no other date on this document indicating that repairs were concluded on this order on December 15.  Another number, a "Miles" record, shows 228,362.  This same number is recorded two lines above "Miles" as a "Hub" reading.

Bates #102 and #103, dated "121503," indicate "Road Service Dept." for the "location," the same as #101, but Bates #102 also lists a "Sharon Rd." as a "vendor" in a section not found in Bates #101. The "Miles" and the "Hub" number on records #102 and #103 are both 228,362, the same as that recorded on #101. There is, in addition, a record of "Road Service Incident Information" in Bates #102 showing the date "121203," the same as #101.  In Bates #103, there is "Ready Time" recorded of "12/17/03," indicating, apparently, that repairs were completed on December 17, 2003.

There is no support in the cited evidence for the argument that the trailer was towed somewhere on December 15, 2003.  Indeed, quite the opposite may well be the case.  If the "Miles" and/or "Hub" indicates a trailer mileage reading equivalent to an

12

automobile odometer,[13] that mileage remained unchanged from December 12, 2003 to

December 17, 2003.  More importantly, the repair listed on Bates #102 could be

interpreted as having begun on December 12, the same date as the repair on Bates

#101.  The court concludes that there is no indisputable evidence of movement of the

trailer on December 15 and that a reasonable jury could well determine that the trailer

was operated in Michigan for thirty days or fewer.  Indeed, given the state of the repair

and accident records, the court counts only 30 days of proven operation, as follows:

1.      January 20
2.      February 7
3.      February 11
4.      February 21
5.      February 24
6.      March 16
7.      March 17
8.      March 26
9.      March 31
10.     April 2 (the date of the accident)
11.     April 10
12.     April 11
13.     May 8
14.     May 19
15.     May 20
16.     May 22
17.     May 27
18.     June 2
19.     June 4
20.     August 1
21.     August 4
22.     August 22
23.     August 24
24.     September 1
25.     September 8
26.     October 14
27.     December 6

---

[13] This may not be the case, since what appears to be the same indicator shows
both lower and higher numbers in other, earlier repair records.

13

        28.     December 8
        29.     December 12
        30.     December 17

(State Farm's Mot. at Ex. 5, Repair Records, as amended by admission of counsel at oral argument.)

    The court observes in passing that there is a potential spoliation of evidence issue.[14]

## B. Priority Pursuant to Mich. Comp. Laws § 500.3114(5)

    Pursuant to Mich. Comp. Laws § 500.3114(5) of Michigan's No-Fault Act, where an accident occurs between a motorcycle and a motor vehicle, the entity responsible for paying personal protection insurance benefits for the injured motorcyclist is determined according to the following prioritization:

    A person suffering accidental bodily injury arising from a motor vehicle

---

    [14]During his deposition, Mr. Griffin stated that drivers are "required to fill out a log every time – they're required to make an entry every time they change an activity," but J.B. Hunt destroyed these logs (Griffin Dep. at 17.)  In addition, each time that a driver makes a comment on the log, he is required to list the state where the activity is occurring.  (*Id.* at 25.)  Due to the particularity and detail relating to driver activity and state presence, these daily driver logs would allow one to determine with a great deal of accuracy the number of days when a particular driver was driving in a particular state. State Farm complains that no daily driver logs relating to the tractor at issue have been produced and no repair documents relative to the tractor have been produced.  (State Farm's Mot. at 16.)

    Michigan courts have held that "[e]ven when an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence that it knows or reasonably should know is relevant to the action."  *Brenner v. Kolk*, 573 N.W.2d 65, 71 (Mich. Ct. App. 2002).  In the instant case, J.B. Hunt was on notice of the "potential for litigation" at least by April 25, 2003 when Mr. Adams presented his request for benefits and J.B. Hunt denied that request.  The court notes that "[w]hen a party deliberately destroys evidence, "a presumption arises that the evidence, if produced, 'would operate against him, and every intendment will be in favor of the opposite party.'"  *Johnson v. Austin*, 280 N.W.2d 9, 11 (Mich. 1979); *see also Grossheim*, 450 N.W.2d at 42 ("[U]nder Michigan law, an adverse inference may be drawn against a party who fails to produce evidence within its control.")

accident which shows evidence of the involvement of a motor vehicle
while an operator or passenger of a motorcycle shall claim personal
protection insurance benefits from insurers in the following order of
priority:

(a) The insurer of the owner or registrant of the motor vehicle involved in
the accident.
(b) The insurer of the operator of the motor vehicle involved in the
accident.
(c) The motor vehicle insurer of the operator of the motorcycle involved in
the accident.
(d) The motor vehicle insurer of the owner or registrant of the motorcycle
involved in the accident.

Mich. Comp. Laws § 500.3114(5).

J.B. Hunt also argues that the trailer was not "involved in an accident" within the

meaning of Mich. Comp. Laws § 500.3114(5)[15] as "[t]here was no contact between J.B.

Hunt Transport, Inc.'s trailer and Jamal Adams or his motorcycle." (J.B. Hunt's Resp. at

9.)[16]  In its reply brief, State Farm argues that this argument is "nonsensical given that

the tractor and trailer were connected and being driven as one unit - the only way a

trailer can be operated, as it cannot be 'driven' on its own." (State Farm's Reply at 3.)

The court finds the *Turner v. Auto Club Ins. Ass'n*, 528 N.W.2d 681 (Mich. 1995)

court's discussion of the phrase "involved in the accident" to be instructive. The *Turner*

court held:

the motor vehicle, being operated or used as a motor vehicle, must

_____

[15]As noted above, pursuant to Mich. Comp. Laws § 500.3114(5), it is the person
"suffering accidental bodily injury arising from a motor vehicle accident . . . [who] shall
claim personal protection insurance benefits from . . . [t]he insurer of the motor vehicle
*involved in the accident*." Mich. Comp. Laws § 500.3114(5) (emphasis added).

[16]J.B. Hunt acknowledges that J.B. Hunt's "tractor was unquestionably 'involved
in the accident' with Mr. Adams and his motorcycle as it was struck on the passenger
side by Jamal Adams and his motorcycle." (*Id.* at 9.)

15

actively, as opposed to passively, contribute to the accident.  Showing a
mere "but for" connection between the operation or use of the motor
vehicle and the damage is not enough to establish that the vehicle is
"involved in the accident."  Moreover, physical contact is not required to
establish that the vehicle was "involved in the accident," nor is fault a
relevant consideration in the determination whether a vehicle is "involved
in an accident."

*Id.* at 689.

The court finds *Turner*'s language instructive because it rejects as irrelevant J.B.

Hunt's argument that "[t]here was no contact between J.B. Hunt Transport, Inc.'s trailer

and Jamal Adams or his motorcycle." (J.B. Hunt's Resp. at 9.)  According to the *Turner*

court, physical contact is not necessary to establish that a vehicle was "involved in [an]

accident."  *Turner*, 528 N.W.2d at 689.  Moreover, J.B. Hunt has not identified, and the

court has not located, a case involving a collision between a tractor-trailer and another

vehicle where a court treated the tractor or the trailer component as being uninvolved in

the accident due to its failure to make contact with the other party.  Indeed, the court

agrees with State Farm and Blue Care that such an interpretation is not logical.  If the

court were to accept J.B. Hunt's argument, any time a motor vehicle collided with the

trailer as opposed to the tractor of a tractor-trailer, insurance benefits could be denied.

The court acknowledges the holding in *Brasher v. Auto Club Insurance Association*, 393

N.W.2d 881 (Mich. Ct. App. 1986), in which the *Brasher* court held that the vehicle at

issue "clearly was not involved in the activity contributing to the happening of the

accident" because the vehicle "was merely stopped at the red light when one of the

vehicles involved in the original collision veered and struck his vehicle."  *Id.* at 882.  This

holding, however, does not account for the unique position of a trailer which never

generates its own movement, but must always be attached to another vehicle if it is to

16

move.  In sum, the court finds *Turner* instructive and rejects as irrelevant J.B. Hunt's argument that the trailer was not "involved" in an accident under Mich. Comp. Laws § 500.3114(5).

## IV.  CONCLUSION

Although the trailer was "involved" in the subject accident, a reasonable jury could find that J.B. Hunt operated its tractor in Michigan for fewer than 31 days in 2003 and that it operated its trailer in Michigan for fewer than 31 days in 2003.  Accordingly,

IT IS ORDERED that State Farm's "Motion for Summary Judgment" [Dkt. # 57] is DENIED.

IT IS FURTHER ORDERED that Blue Care Network's "Motion for Partial Summary Judgment" [Dkt. # 58] is DENIED.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  May 9, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 9, 2006, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\Odd Orders\04\70347.JBHUNTDenyingSJ.5.wpd