**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

J.B. HUNT TRANSPORT, INC.,

       Plaintiff,

v.                                    Case No. 04-CV-70347-DT

JAMAL ADAMS and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

       Defendants,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Third-Party Plaintiff,

v.

HERMAN DIAZ,

       Third-Party Defendant.

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Counter-Claimant,

v.

J.B. HUNT,

     Counter-Defendant,

and

STATE FARM MUTUAL AUTOMOBILE

INSURANCE COMPANY,

      Third-Party Plaintiff,

v.

BLUE CARE NETWORK OF MICHIGAN,

      Third-Party Defendant.

_____/

## OPINION AND ORDER DENYING STATE FARM'S MOTION FOR SUMMARY JUDGMENT AND GRANTING J.B. HUNT'S MOTION FOR SUMMARY JUDGMENT

Pending before the court are cross-motions for summary judgment filed by State Farm Mutual Automobile Insurance Company ("State Farm") and J.B. Hunt Transport, Inc. ("J.B. Hunt"). The motions have been fully briefed and the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny State Farm's motion and grant J.B. Hunt's motion.

## I. BACKGROUND[1]

On April 2, 2003, in Southfield, Michigan, a motorcycle driven by Jamal Adams drove into a tractor-trailer owned by J.B. Hunt and driven by J.B. Hunt employee, Herman Diaz.[2] As a result of the collision, Adams was seriously injured and requested that J.B. Hunt provide him personal protection benefits. J.B. Hunt refused to pay the benefits. Adams then requested that State Farm, his motor vehicle insurer, provide him

---

[1]Portions of the Background section have been set forth in previous orders of the court. Unless otherwise noted, the facts are undisputed.

[2]Diaz was traveling on Eight Mile Road when he began to turn right onto a driveway abutting the road. (*See* Police Report, J.B. Hunt's Ex. 8.) As Diaz was making the turn, Adams, driving his motorcycle to the rear of Diaz and then moving up to Diaz's right, collided with the passenger side of Diaz's tractor. The police report notes a reckless, high speed motorcycle abruptly changing lanes and doing a "wheely." (*Id.*)

with no-fault benefits. State Farm provided the benefits to Adams, but claims that it is entitled to reimbursement and indemnification for all personal protection insurance benefits that State Farm has paid and will pay to Adams.

This action revolves around which entity is required to pay for Adams' personal protection benefits in connection with the accident. There does not appear to be any dispute that if the mandatory security requirements of the Michigan No Fault Act apply to J.B. Hunt, then J.B. Hunt is first in priority and must provide Adams with benefits.[3] Rather, the dispute centers upon whether J.B. Hunt is subject to the Michigan No Fault Act at all.[4] J.B. Hunt instituted this declaratory action on January 30, 2004, seeking a declaration that it was not obligated to pay benefits because the tractor at issue was not

_____

[3] The priority provision of the No Fault Act, Mich. Comp. Laws § 500.3114(5), provides:

> A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.
>
> (b) The insurer of the operator of the motor vehicle involved in the accident.
>
> (c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.
>
> (d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.

[4] J.B. Hunt is incorporated in Georgia and has its principal place of business in Arkansas. (Pl.'s Compl. at ¶ 1.) The tractor involved in the accident was registered in Oklahoma. (*Id.* at ¶ 13.)

covered by the Michigan No Fault Act because the tractor was not operated in Michigan

for more than 30 days in 2003 (Count II).[5]  State Farm filed a counterclaim against J.B.

Hunt, seeking reimbursement from J.B. Hunt for the no-fault benefits State Farm has

already paid and continues to pay to Adams.

The case proceeded through discovery and dispositive motion practice.   State

Farm and Blue Care Network filed motions for summary judgment, arguing that J.B.

Hunt was subject to the security requirements of the No Fault Act because its tractor

and trailer were operated in Michigan for the requisite number of days.  After holding a

hearing, this court denied both motions, concluding that a rational jury could find that

J.B. Hunt did not operate its tractor or trailer in Michigan for more than 30 days in 2003.

(5/9/06 Order.)

After several adjournments, a jury trial was scheduled to commence on

September 27, 2006.  Two days prior to trial, the court was contacted by counsel, who

requested that trial be adjourned and discovery reopened because of J.B. Hunt's

erroneous discovery responses.   Specifically, in March 2005, State Farm had

requested that J.B. Hunt produce "all documents related to the J.B. Hunt trailer that was

involved in the accident that is the subject of the captioned litigation for the life of the

trailer, including but not limited to . . . [r]epair records."  (*See* State Farm's Mot. for

Costs at 6.)  In response, J.B. Hunt produced repair records in June 2005, which J.B.

Hunt represented related to the trailer at issue.  (*Id.*)  State Farm contends that these

---

[5]J.B. Hunt also argues that the Michigan No Fault Act is unconstitutional as
applied (Counts III & IV) and that Adams' injuries were caused intentionally because
Adams was "pulling a wheelie" on his motorcycle (Count I).  (*See* Pl.'s Compl.)  None of
these theories are at issue here.

documents established that the trailer at issue was operated in Michigan for more than 30 days in 2003. While preparing for trial, however, J.B. Hunt discovered that some, or a majority, of the repair records which it produced actually related to a tractor and trailer that were not involved in the accident at issue. (*Id.* at 7.) J.B. Hunt informed State Farm, and together the parties contacted the court for an emergency telephone conference.

As a result of this conference, and because of J.B. Hunt's erroneous document production, the court adjourned the trial and reopened discovery. *(See* 9/29/06 Order.) The court conducted another conference in October 2006 and determined that additional discovery was warranted. (*See* 10/31/06 Order.) Discovery has now concluded, and both State Farm and J.B. Hunt have filed motions for summary judgment.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do

not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 (emphasis and alteration in original) (citation omitted) ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an

essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## III. DISCUSSION

### A. Security Requirements of Mich. Comp. Laws § 500.3102(1)

The issue at hand centers upon whether J.B. Hunt's tractor-trailer was subject to the mandatory security requirements of the No Fault Act at the time of the collision. If the tractor-trailer was subject to such security requirements, then J.B. Hunt is first in priority to provide Adams with personal protection insurance benefits. If J.B. Hunt is not subject to the security requirements, then J.B. Hunt is not obligated to provide Adams with benefits and the obligation falls to the next entity in the priority line, in accordance with the priority provision of § 500.3114(5).[6]

The relevant provision of the No Fault Act provides, in pertinent part:

> A nonresident owner or registrant of a motor vehicle or motorcycle not registered in this state shall not operate or permit the motor vehicle or motorcycle to be operated in this state for an aggregate of more than 30 days in any calendar year unless he or she continuously maintains security for the payments of benefits pursuant to this chapter.

Mich. Comp. Laws § 500.3102(1). Therefore, "[s]ecurity must be maintained for vehicles operated in this state for more than thirty days in a single calendar year." *Parks v. Detroit Auto Inter-Insurance Exchange*, 393 N.W.2d 833, 837 (Mich. 1986). The 30-day requirement is designed to protect tourists and other transient nonresidents

---

[6]There is a dispute between State Farm and Blue Care Network regarding which entity is next in priority to provide Adams with no fault benefits, should J.B. Hunt be found not subject to the security requirements of the No Fault Act. The court expresses no opinion on that dispute. Pursuant to a stipulated order, State Farm's claims against Blue Care Network are stayed pending resolution of all of the claims among J.B. Hunt, State Farm, Jamal Adams, and Herman Diaz. (9/24/04 Stipulated Order.)

from criminal sanctions imposed by the No Fault Act.  *Gersten v. Blackwell*, 314 N.W.2d

645, 648 (Mich. Ct. App. 1981).

## B.  Interpretation of "calendar year" as used in § 500.3102(1)

State Farm grounds its motion on the assertion that the term "calendar year," as

used in § 500.3102(1), refers to the twelve-month period immediately preceding an

accidental bodily injury upon which a claim for benefits is based.  State Farm maintains

that since the tractor at issue was undisputedly operated in Michigan for more than 30

days during the twelve months preceding the collision, J.B. Hunt is subject to the

security requirements of the No Fault Act.  (State Farm's Mot. at 11-13.)  J.B. Hunt, on

the other hand, contends that the plain, unambiguous meaning of "calendar year" is the

time period of January 1 through December 31 of the year in which the claim arises.

(J.B. Hunt's Resp. Mot. at 1-12.)  J.B. Hunt asserts that since neither its tractor nor its

trailer was operated in Michigan for more than 30 days in 2003, neither the tractor nor

the trailer was subject to the security requirements of the No Fault Act.[7]  (*Id.*)

Accordingly, the heart of the issue lies in the interpretation of "calendar year," as used in

Michigan's No Fault Act.

Although the No Fault Act does not define the term "calendar year," the term is

defined in Michigan case law.  In *Mathews v. Republic Western Ins. Co.*, No. 251333,

---

[7]J.B. Hunt does acknowledge that "in some calendar years, the tractor involved in the subject accident was driven in Michigan for more than 30 days," just not in the calendar year 2003.  (J.B. Hunt's Answers to State Farm's Request for Admissions at 2, J.B. Hunt's Ex. 13.)

2006 WL 510512, at *3 (Mich. Ct. App. March 2, 2006),[8] which likewise explored the

meaning of the term calendar year within the context of § 500.3102(1), the court

declared that the plain meaning of "calendar year" is the twelve-month period from

January 1 through December 31 of the year in which the accident occurred.[9] The

defendant in *Matthews,* the insurer of the truck involved in the accident, attempted to

prove that the truck was not subject to the mandatory security requirements of the No

---

[8]The Michigan Supreme Court granted leave to appeal the Court of Appeals'
decision in *Matthews* and directed the parties to brief whether the term "calendar year"
refers "to the 12 months preceding the accidental bodily injury on which a claim for
personal protection benefits is based, the calendar year in which the claim arises, the
calendar year preceding the year in which the claims arises, to all of the foregoing, or to
some other period equal to a calendar year." *Mathews v. Republic Western Ins.* Co.,
725 N.W.2d 463, 464 (Mich. 2007). However, the Supreme Court went on to vacate its
order granting leave to appeal and ordered that leave to appeal be denied, noting that
"we are no longer persuaded that the questions presented should be reviewed by this
Court." *Mathews v. Republic Western Ins.* Co., 731 N.W.2d 426 (Mich. May 25, 2007).
The court also denied a motion for reconsideration. *Mathews v. Republic Western Ins.*
Co., 733 N.W.2d 17 (Mich. June 22, 2007). Consequently, the order suggesting that the
term "calendar year" is subject to various interpretations has no precedential value.
Furthermore, State Farm's argument that this court should stay the matter pending the
Michigan Supreme Court's determination of the correct interpretation of calendar year is
moot.

[9]Random House Webster's College Dictionary defines "year" as: "a period of 365
or 366 days, in the Gregorian calendar, divided into 12 calendar months, now reckoned
as beginning Jan. 1 and ending Dec. 31 **(calendar year)**." *Random House Webster's
College Dictionary* 1491 (2nd ed. 1997) (bold in original). Black's Law Dictionary
defines "calendar year" thus: "[t]he period from January 1 to December 31 inclusive.
Ordinarily calendar year means 365 days except leap year, and is composed of 12
months varying in length." *Black's Law Dictionary* 140 (6th ed. 1991). Additionally, the
term "calendar year" has been construed in several cases, spanning jurisdictions, to
indicate the period from January 1 to December 31, inclusive. E.L. Strobin, *What
12-month Period Constitutes "year" or "calendar year" as Used in Public Enactment,
Contract, or other Written Instrument,* 5 A.L.R.3d 584 (1966).
    A court may consult a dictionary definition to ascertain the generally accepted
meaning of a term that is not expressly defined by statute. *Oakland Co. Bd. of Co. Rd.
Comm'rs v. Michigan Property & Casualty Guaranty Ass'n,* 575 N.W.2d 751, 757-758
(Mich. 1998).

Fault Act by presenting an affidavit indicating that the truck had not been operated in Michigan for more than 30 days "in the calendar year preceding" the accident. The court rejected the notion that the "preceding" calendar year was relevant in the § 500.3102(1) analysis. It noted:

> [T]he trial court correctly concluded that Balcerczak's affidavit did not resolve the question as to the location of the vehicle between January 1, 1996 and the date of the accident[, July 14, 1996]. *See* Random House Webster's College Dictionary (2nd ed), p 1491, defining the word "year" as "as a period ... divided into 12 calendar months, now reckoned as beginning January 1 and ending December 31 (calendar year)." [Bold in original];" see also Black's Law Dictionary (8th ed), p 1646, defining the word "year" as "[t]welve calendar months beginning January 1 and ending December 31.-Also termed calendar year." [Italics in original]. Giving the term, "calendar year" its plain meaning, Balcerzak's affidavit must be read as addressing the location of the truck between January 1, 1995 and December 31, 1995, and not addressing the vehicle's location from January 1, 1996 forward.

*Matthews*, 2006 WL 510512 at *3.[10] In addition to establishing that a calendar year means the interval of January 1 through December 31, *Matthews* established that the relevant calendar year is the one in which the accident occurred. This is apparent in the court's reasoning that Balcerczak's affidavit is deficient because it does not resolve the question regarding how many days the truck was operated in Michigan in the year of the accident. If the relevant calendar year were the one preceding the year in which the accident occurred, there would be no need to determine how many days the truck was operated in Michigan in the year of the accident. *See also Comcast Cablevision of Sterling Heights, Inc. v. City of Sterling Heights,* 443 N.W.2d 440, 444 (Mich. Ct. App.

---

[10]Although *Matthews* is unpublished and thus not precedentially binding, this court is entitled to conclude that the reasoning of an unpublished decision is persuasive. *Steele v. Dep't of Corrections*, 546 N.W.2d 725, 728 n.2 (Mich. Ct. App. 1996). This court finds the reasoning of *Matthews* to be persuasive and applicable to the instant case.

1989) ("[T]he term 'year' when used in a statute has generally been construed to denote a calendar year, running from January 1 to December 31. . . [I]f Congress intended a twelve-month period, it knew how to so specify . . . .").

The same statutory provision was also involved in *Parks,* where the court was called upon to determine whether a tractor-trailer was operated in Michigan for more than 30 days. *Parks*, 393 N.W.2d at 837. Although the *Parks* court was not confronted with, and thus made no express ruling regarding the correct interpretation of "calendar year," the court was called upon to apply § 500.3102(1) and did so using the calendar year in which the claim arose. Because the tractor-trailer at issue in *Parks* was not operated in Michigan for more than 30 days in the year in which the claim arose, the court held that "the trailer was not subject to the mandatory security requirements of § 3102(1) at the time of the injury." *Id.* at 837.

State Farm fails to cite to, and this court could not locate, case law to support the contention that the twelve months preceding the accident is the relevant time period. Although the "twelve months preceding" argument is unsubstantiated, the court does recognize that, notwithstanding the plain meaning of "calendar year," there exist a few cases involving § 500.3102(1) which make mention of a "previous" or "preceding" calendar year. Judge Reilly in his concurring opinion in *Grossheim v. Associated Truck Lines, Inc.*, 450 N.W.2d 40 (Mich. Ct. App.1989), stated that § 500.3102 "must be interpreted to impose the burden on the nonresident owner or registrant of the vehicle which is not registered in Michigan to maintain records to support the claim that the vehicle had not been operated in Michigan for more than thirty days in the *previous calendar year*." *Id.* at 42 (emphasis added). Additionally, the court in *Citizens Ins. Co. of*

11

*America v. Roadway Exp., Inc.*, 354 N.W.2d 385 (Mich. Ct. App. 1984) noted that

"[defendant] submitted uncontroverted affidavits stating that its trailer was registered in

the State of Tennessee and had not been operated in Michigan for more than 30 days

during the *preceding calendar year.*" *Id.* at 387 (emphasis added).

This court is not convinced that the language in *Grossheim* or *Citizens* sufficiently

establishes that the calendar year preceding the year in which the accident occurred is

the relevant time period. First, as explained *supra,* the bulk of the case law holds that

the relevant time period is the calendar year in which the accident occurred. *See Parks,*

393 N.W.2d at 837*; Matthews,* 2006 WL 510512 at *3.[11] Significantly, even if

*Grossheim* and *Citizens* can be viewed as lending credence to the argument that the

term calendar year is subject to various interpretations, the cases do nothing to support

State Farm's contention that the twelve months preceding the accident is the relevant

time period. *Grossheim* and *Citizens* refer, respectively, to a previous and preceding

"calendar year," i.e., January 1 through December 31 of the year before the year in

which the accident occurred. To the contrary, State Farm is the proponent of a

completely different time period.

Second, the court relies upon case law that is consistent with a plain reading of §

500.3102(1). Section 500.3102(1) makes no mention of a "preceding" or "previous"

calendar year. Rather, the statute simply provides that any vehicle or motorcycle

operated in Michigan for an aggregate of more than 30 days "in any calendar year" must

---

[11]For additional cases which utilized the term "calendar year" as opposed to a preceding
or previous year, see *Farmers Ins. Exchange v. Farm Bureau General Ins. Co. of
Michigan*, 731 N.W.2d 757, 762 (Mich. 2007); *McGhee v. Helsel*, 686 N.W.2d 6, 8
(Mich. Ct. App. 2004); *Drake v. Gordon*, 644 F.Supp. 376, 378 (E.D. Mich. 1985).

be insured.  Statutory language must be enforced as written and according to the plain

meaning of the words.[12]  *Devillers v. Auto Club Insurance* Ass'n, 702 N.W.2d 539, 552,

555 (Mich. 2005).  Subsequent to the determination that the term "calendar year" refers

to the time period of January 1 through December 31, the next focus of inquiry is which

calendar year is the correct one to consider.  J.B. Hunt contends that only the calendar

year in which the accident occurs is relevant in determining whether the vehicle involved

in the accident was required to be insured at the time of the accident.  (J.B. Hunt's

Resp. at 1-12.)  The court agrees that the calendar year in which the accident occurred,

and not the preceding year, is the relevant calendar year.

---

[12]According to the Michigan Court of Appeals:

> The primary goal of statutory interpretation is to ascertain and give effect
> to the intent of the Legislature.  Initially, we review the language of the
> statute itself. If the statute is unambiguous on its face, the Legislature is
> presumed to have intended the meaning plainly expressed and further
> judicial interpretation is not permissible.  Only where the statutory
> language is ambiguous may a court properly go beyond the words of the
> statute to ascertain legislative intent.  An ambiguity of statutory language
> does not exist merely because a reviewing court questions whether the
> Legislature intended the consequences of the language under review.  An
> ambiguity can be found only where the language of a statute as used in its
> particular context has more than one common and accepted meaning.
> Thus, where common words used in their ordinary fashion lead to one
> reasonable interpretation, a statute cannot be found ambiguous.

*Colucci v. McMillan*, 662 N.W.2d 87, 90 (Mich. Ct. App. 2003) (internal citations
omitted).

Finally, the remarks in *Grossheim* and *Citizens* pertaining to the "preceding" or "previous" calendar year are fleeting and ill-supported.[13]  Neither opinion includes an analysis of the specific issue implicated in this case.  Instead, the opinions present a singular mention of the word "previous" or "preceding" without providing any explanation as to the origin or meaning of the word or anything by way of support for the contention that the preceding or previous year is relevant in analyzing § 500.3102(1).  In sum, the remarks are fleeting and unsubstantiated and do not support a finding that the calendar year preceding the year of the accident is the relevant time period for purposes of § 500.3102(1).

Further, State Farm also claims that the purpose of the 30-day provision would best be served by construing the term calendar year to refer to the twelve months preceding the accident.  (State Farm's Mot. at 12-13.)  The purported merits of such a construction notwithstanding, the cost-benefit analysis involved in determining which time period more fairly serves the purposes of the No Fault Act is a matter of policy best left to the Legislature.

---

[13]In *Grossheim,* the majority opinion makes no mention of a preceding or previous calendar year. The extent of the elaboration on § 500.3121(1) is as follows: "[defendant] claimed it was not required to insure the truck in Michigan because the truck had not operated in Michigan for the thirty days required."  *Grossheim*, 450 N.W.2d at 41.  Likewise in *Citizens,* the issue in front of the court did not involve interpretation of the term calendar year, but rather, "[t]he sole issue presented in this case is whether the trailer is a separate and distinct "motor vehicle" within the meaning of the no-fault act."  *Citizens,* 354 N.W.2d at 387.  The remark concerning a preceding calendar year was singular, unsupported, and did not play a role in the court's analysis of the issue before it.

## C.  The Law of the Case Doctrine

In denying State Farm's first motion for summary judgment, this court concluded that "a reasonable jury could find that J.B. Hunt operated its tractor in Michigan for fewer than 31 days in 2003 and that it operated its trailer in Michigan for fewer than 31 days in 2003." (5/9/06 Order at 17.)  Although the court did not expressly state that it had made a finding that the relevant time period was the calendar year 2003, as the issue of interpreting the term "calendar year" did not arise until State Farm presented it in its second motion for summary judgment, a review of the court's order suggests that the court proceeded as though the calendar year 2003 was the relevant time period.[14] Pursuant to the law-of-the-case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation.  *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994).  The doctrine applies to findings either expressly or impliedly made.  *Id.*

Notwithstanding State Farm's failure to raise the issue in its first motion for summary judgment, this court acknowledges that where, as here, the contested issue is critical to the disposition of the case, yet was not specifically and fully addressed previously, an injustice could occur by precluding a reopening of the issue.  To the extent that the calendar year issue was previously decided, the law-of-the-case doctrine

---

[14]It does not appear that the court made an explicit finding concerning which time period was the correct one, but rather, simply followed the parties' lead and accepted the time period proffered by the parties.  At least implicitly, it seems that the court determined that 2003 was the correct time period to be utilized in determining how many days the tractor and trailer were operated in Michigan.  Additionally, both J.B. Hunt and State Farm framed the issue as involving the time period of 2003.  Nowhere in State Farm's first motion for summary judgment or in its reply, did State Farm raise the argument that the relevant time period was the twelve months preceding the accident.

allows a court to reopen an issue previously decided where "a clearly erroneous decision would work a manifest injustice." *Id.* However, a manifest injustice cannot be said to have occurred here. As discussed, *supra,* the court has analyzed the issue on its merits and is persuaded that "calendar year," as used in § 500.3102(1), refers to the time period of January 1 through December 31 of the year in which the accident occurred. Hence, the law-of-the-case doctrine, if applicable, serves to bolster the court's determination, and, if not applicable, does nothing to undermine the court's determination, as the court's previous findings are in accordance with its present findings.

### D. OBC Reports

There was an on-board computer ("OBC") installed on the tractor at issue which used satellite technology to record the tractor's location.[15] (Diaz Dep. at 41, 70-71, J.B. Hunt's Ex. 5.) OBC reports establish that the tractor was operated in Michigan for 30 days during the calendar year of 2003.[16] (OBC Records, J.B. Hunt's Ex. 11.)

---

[15] The OBC is on whenever the tractor's engine is running. (Diaz Dep. at 68-69, J.B. Hunt's Ex. 5.) At least once an hour, the OBC sends a signal to a satellite indicating the tractor's location. (Cope Dep. at 64-66, J.B. Hunt's Ex. 7.) The OBC also sends a signal when the tractor is turned on or off and when a driver begins and finishes unloading. (Diaz Dep. at 69-71, J.B. Hunt's Ex. 5.)

[16] The tractor was operated in Michigan in the calendar year of 2003 on the following thirty dates: January 6, 7, 21, and 22, February 2, 3, 9, 10, 11, 12, 17, 18, and 19, March 10, 11, 12, 13, 18, 19, 24, 25, 30, and 31, and April 1, 2, 3, 4, 27, 28, and 29. (OBC Records, J.B. Hunt's Ex. 11.)

Although there was no OBC on the trailer at issue, as is typical for J.B. Hunt's trailers, a trailer's location could be tracked via the trailer's dispatch history, which consists of OBC records for the tractors that were at any point connected to the trailer. (Diaz Dep. at 52-53, J.B. Hunt's Ex. 5.)  By reviewing the OBC records for the tractors associated with a particular trailer, one can determine how many days the trailer was operated in a given state.  (Core Dep. at 106, J.B. Hunt's Ex. 7.)  The dispatch records establish that the trailer at issue was operated in Michigan for 16 days during the 2003 calendar year.[17]  (Dispatch Records, J.B. Hunt's Ex. 12.)

Significantly, State Farm does not present any evidence to dispute the OBC or dispatch records.  Rather, State Farm focuses its argument on the interpretation of calendar year.  Utilizing the "twelve months preceding the accident" time period, it is uncontested that the tractor was operated in Michigan for 49 days.[18]  (2002 OBC Records, State Farm's Ex. 6.)  However, as explained above, the correct time period is the calendar year of 2003 (January 1 through December 31, 2003).  Accordingly, the tractor's presence in Michigan during a different time period is irrelevant.

### E.  Adverse Inference

J.B. Hunt drivers are required to make an entry into their driver's log every time they change an activity.  (8/10/05 Griffin Dep. at 17, J.B. Hunt's Ex. 9.)  Each time a

---

[17]The trailer appears to have been operated in Michigan in the calendar year of 2003 on the following sixteen dates: February 11 and 12, March 31, April 2 and 3, June 15, 16, and 17, August 25, 26, and 27, September 8 and 9, and October 28, 29, and 30. (Dispatch Records, J.B. Hunt's Ex. 12.)

[18] Pursuant to the dates provided by J.B. Hunt in its Answer to Blue Care's Second Interrogatories, the tractor at issue was not operated for more than 30 days during the calendar year 2002.  (J.B. Hunt's Answers to Blue Care's Second Interrogatories, J.B. Hunt's Reply to Blue Care's Mot. at Ex. 1.)

driver makes a comment on the log, he is required to list the state wherein the activity occurred. (*Id.* at 25.) J.B. Hunt was unable to produce the driver logs or repair documents for the tractor and trailer in question because it had already discarded the documents. (J.B. Hunt's Reply to Blue Care's Br. at 4-5.) J.B. Hunt preserved the logs and repair documents for the requisite amount of time provided in the federal regulations governing interstate motor carriers, then discarded them. (*Id.*) Blue Care Network argues that, notwithstanding J.B. Hunt's compliance with the regulations, J.B. Hunt's act of discarding the documents after the potential for litigation had arisen entitles Blue Care[19] to an adverse inference that the tractor and trailer were operated in Michigan for more than 30 days in 2003. (Blue Care Network's Resp. at 9.)

Michigan courts have held that "[e]ven when an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence that it knows or reasonably should know is relevant to the action." *Brenner v. Kolk,* 573 N.W.2d 65, 71 (Mich. Ct. App. 2002). In the instant case, J.B. Hunt was on notice of the "potential for litigation" at least by April 25, 2003, when Adams

---

[19]Although Blue Care did not file a summary judgment motion of its own, it did file a brief in opposition to J.B. Hunt's motion. (See Blue Care's Br. in Opposition to J.B. Hunt's Mot.) Blue Care's arguments essentially tracked State Farm's arguments. The only argument that Blue Care raised in its brief that State Farm did not raise in its own motion was the adverse inference argument. (Blue Care's Br. at 9-10.) Pursuant to a stipulated order staying State Farm's claims against Blue Care, Blue Care's role in this action is not the focus of the instant order. (9/24/04 Stipulated Order.)

presented his request for benefits and J.B. Hunt denied that request.  Generally, where a party deliberately destroys or fails to produce evidence, courts will presume that the evidence would operate against the party who destroys or suppresses.  *Hamann v. Ridge Tool Co.,* 539 N.W.2d 753, 755 (Mich. Ct. App. 1995).  However, missing evidence gives rise to an adverse presumption only when the complaining party can establish intentional conduct indicating fraud and a desire to destroy evidence and thereby suppress the truth.  *Ward v. Consol. R.R. Corp.*, 693 N.W.2d 366, 371 (Mich. 2005).

In the instant case, there is no evidence to suggest that J.B. Hunt destroyed the records fraudulently or in bad faith. The records were discarded in accordance with the controlling regulations and in accordance with J.B. Hunt's standard business practices. To the extent that J.B. Hunt can be considered culpable for failing to preserve relevant documents after the potential for litigation had arisen, the court is still not persuaded that an adverse inference is necessary.  J.B. Hunt preserved the OBC reports, which are the best evidence to determine the tractor's location, and such evidence conclusively established that neither the tractor nor trailer was in Michigan for more than 30 days in the calendar year 2003.  Where, as here, there exists credible, uncontroverted evidence to refute the adverse inference, the adverse inference is rebutted, if not altogether unwarranted.  *Ward,* 693 N.W.2d at 371 (stating that a presumption disappears where there is credible rebuttal evidence or where there was no intentional conduct indicating fraud).

Any inference that the tractor was operated in Michigan for more than 30 days in 2003 is rebutted by the OBC records.  The OBC records are what J.B. Hunt relies upon

for the most accurate method of tracking a tractor.  (Cope Dep. at 24, J.B. Hunt's Ex. 7.)

Although the driver logs also provide information concerning a tractor's location, the

logs are not as accurate as OBC records in determining the exact location of a tractor.

(9/27/06 Griffin Dep. at 75, 77-78, J.B. Hunt's Ex. 10.)  Because a driver is only required

to make an entry in his driver log when he changes an activity, the logs would not

document the tractor's presence in a state if the driver has not changed activity within

the state and had not otherwise had occasion to make an entry into his log during his

travel through the state.[20]  (8/10/05 Griffin Dep. at 19, J.B. Hunt's Ex. 9; 9/27/06 Griffin

Dep. at 77-78, J.B. Hunt's Ex. 10.)

The OBC, which is on whenever the tractor's engine is running, sends a signal to

a satellite indicating the tractor's location.  A signal is sent at various times, including, at

least once an hour, when the tractor is turned on or off, and when a driver begins and

finishes unloading.  (Diaz Dep. at 68-71, J.B. Hunt's Ex. 5; Cope Dep. at 64-66, J.B.

Hunt's Ex. 7.)  Each OBC entry identifies, with objective precision, the city and state in

which the tractor was located when the signal was sent, including latitudinal and

longitudinal coordinates.  The OBC records account for every day that the tractor was

operated in 2003; the records begin with January 1, 2003 and run through May 4, 2003,

at which point the tractor was taken out of service at a J.B. Hunt facility in Georgia, and

no longer driven, in preparation for a May 28, 2003 trade-in of the tractor, pursuant to

J.B. Hunt's standard retention policy.  (8/10/05 Griffin Dep. at 105-108, J.B. Hunt's Ex.

_____

[20]In a driver log, drivers are required to account for all of their time, including time spent
loading or unloading, driving, taking a break, or sleeping.  (Diaz Dep. at 67, J.B. Hunt's
Ex. 5; 8/10/05 Griffin Dep. at 17-23, J.B. Hunt's Ex. 9.)

9.) There is no gap in the records and there is no evidence that the records are inaccurate or otherwise deficient.

Consequently, State Farm's motion fails in that State Farm cannot demonstrate that the tractor or trailer was in Michigan for more than 30 days in the calendar year 2003, the relevant time period. J.B. Hunt's motion is meritorious because it is supported by the OBC and dispatch records which establish no question of material fact that neither the tractor nor the trailer was operated in Michigan for more than 30 days in 2003.

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that State Farm's "Motion for Summary Judgment" [Dkt. # 104] is DENIED and J.B. Hunt's "Motion for Summary Judgment" [Dkt. # 105] is GRANTED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: July 19, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 19, 2007, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522